We'll hear argument first this morning in Case 12-399, Adoptive Couple v. Baby Girl. Ms. Blatt. Thank you, Mr. Chief Justice, and may it please the Court. All parties agree that even if the birth father is a parent under the Indian Child Welfare Act, the State court decision below awarding custody to the father must nonetheless be reversed unless Sections 1912d or f create custodial rights that the father concededly does not have under State law. Are you suggesting, I don't know that the parties, I know that the government has said that f doesn't apply to the father, but d does, so there's not a full concession on your point. But putting that aside, if it is a father who has visitation rights and exercising all of his support obligations, is it your position that because that father is not a custodian, he has no protections whatsoever under D or E? The State can come and take the child away from an unfit mother or father, if they're the ones with custody, and that responsible parent who only has visiting rights has no protections under D, E, or F? Blatt. Well, under State law, it's not. I'm not asking about State law. I'm asking about Federal law. Right. I think, yes, Federal law, which requires custodial rights, would protect a father who has visitation, i.e., custodial rights under State law. So in other words, that is to say, if the father is not a custodian, he has no protections  Sotomayor, if d doesn't talk about custodial rights, I do agree that f talks about continued custody. Right. Okay. So let's talk about d, because I think we are in agreement that the Respondents would have to agree that they either need to win under D or F, and we can talk about section 1915, but that's not a basis for father. But section D, and I'm reading from the blue brief at 8A, says that it requires a party seeking the termination of parental rights to provide, quote, remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. Well, you don't think that a parent with custody — well, you do think a parent with custody is the only definition of family. But why wouldn't a noncustodial parent with visitation rights be considered a family with custody? My understanding under State law, a parent who's — I'm not going to State law. Could I hear her answer, please? Yeah. So the answer is a parent with visitation rights has custody, so he's protected. Under State law, if you're paying child support and you bring a paternity action and sue for visitation rights, that's a petition for custody. So all a birth dad needs to do to protect himself is to acquire legal rights. This father had no legal rights whatsoever, parental or custodial. And the word breakup, even the other side concedes, it's discontinuance of an existing legal relationship. There was no legal relationship between this child and the birth father or his relatives. Well, there is a support obligation on that on wet father. No. Why isn't that a parental right? It's one of the parental rights. This State's in force whether or not you want to provide support or not. If a child is being adopted by definition, the adoptive family would be providing the support. But let's take what a — again, the definition of breakup. There is no familial, legal, custodial, parental relationship that either this father or the — or his parent — his extended family had with this child. This adoption no more broke up an Indian family than this Hispanic sole custodial birth mother had raised the child herself. Sotomayor, what do you do with the States that do give unwed fathers that don't support their children and who don't have an ongoing relationship the right to be considered first for adoption? Why should we follow the definitions of South Carolina or those other States? Why shouldn't we just give it a Federal meaning? Because there's nothing in this Act that anyone can point to that was a basis for transferring custody to this father. At most, there is an obligation, an exhaustion obligation, that if a custodial parent has something like a drug abuse problem, the State has to remediate before the family is broken up. What is so extraordinary about this case, particularly the United States position, is that the adoptive parent's failure to remediate a dad meant that the child got custody of the dad. So if this dad had had a drug problem, because there was no treatment of him, the court held, well, that's a basis for giving the dad custody. But there's no language in the statute that even remotely suggests that it's a rights-creating provision. All of both D, E, and F are protections that assume existing rights and then make it harder to terminate those rights. Scalia. Your argument assumes that the phrase in the statute, to prevent the breakup of the Indian family, only applies where the father has custody. I don't know why that should be true. If that's what Congress meant, they could have put it much more narrowly. They had a very broad phrase, to prevent the breakup of an Indian family. And this guy is the father of the child. And they're taking the child away from him even though he wants it. That is not the breakup of an Indian family? The only relationship the dad has is one of biology. And, Justice Scalia, you cannot logically break up that biological relationship, nor can you provide remedial services to prevent the breakup of that biological relationship. Scalia. You're reading Indian family to mean something more than a biological relationship, right? You're going to hang a lot of other ornaments on that phrase? Well, I'm hanging a lot on two things. I mean, it seems to me he's the father, the other woman's the mother. That's the English — that's the Indian family, the father, the mother, and the kid. He has a biological link that under State law was equivalent to a sperm donor. He's the father. He's the father. And so is the sperm donor under your definition. He's a biological father and nothing else in the eyes of State law. And under that view — This isn't State law. This is a Federal statute which uses an expansive phrase, the breakup of the Indian family. Right. And there is no Indian family here. The only breakup — What's the difference with a sperm donor? I mean, I know that you raised that in your brief. But going back to Justice Scalia's point, if the choice is between a mother, a biological father, or a stranger, and if the father is fit, why do you think that the Federal statute requires that it be given to a stranger rather than to the biological father when the statute defines parent as the biological father? And assuming all biological fathers that are acknowledged or established are swept in, which would include any biological father, the only stranger in this case was the birth father, who expressly repudiated all parental rights and had no custodial rights. So, again, the problem the other side has — But he didn't. I mean, he said that he was prepared to surrender rights to the mother, but not to a stranger. And when the issue of adoption came up, he said, yes, I want to assert my parental rights. It was too late. There's not a single State law that lets a dad, birth dad, hold that kind of veto power over a woman. Where is there a reference in the definition of parent to a State law? I see the — which is the section that defines parent? It's section 19039, but even assuming, which is on page 4A, whether it's a Federal definition or a State law definition, I think everyone agrees you've got to at least look at some sort of State law. But even if it's just a bare fact of paternity, meaning a biological link is established, they still have to have a basis for an extraordinary award, a transfer of custody, when there's been no best interest determination and you have a dad who's a complete stranger with no parental rights. Ginsburg. But a parent means a biological parent of an Indian child. And he fits that definition. And then the next section, the next sentence doesn't have any reference to State law. That's right. And again, assuming he is a parent, they need to win both points, Justice Ginsburg. He needs to be a parent. Now, if you're an ICWA parent, which means if you want to accept this definition of all biological, you do have rights under the Federal Act of getting notice and a right to counsel, and the tribe would have a right to intervene. The question is, is there a basis for transferring custody under D or F? F is the one that requires continuing custody. Kagan. But, Ms. Blatt, if he's a parent, why wouldn't some provision in 1912 give him some rights? In other words, what's the point of making him a parent under that definitional section if he doesn't get any of the protections that 1912 provides for when to terminate rights? Because this Act is not about creating rights that didn't otherwise exist. It's about protecting rights and making it harder to terminate rights that already exist. But what's the point of labeling a parent if he gets no parental rights under the Federal Act of getting notice, right to counsel, and heightened consent requirements? So the mother here, the birth mother is a parent, so she had a right to notice, right to counsel, and heightened consent requirement. So those are very significant. Kagan. But he — well, how are they significant? I mean, I'm trying to understand this, because if you get notice, but then you have nothing to say in the proceeding because the statute gives you no rights and the statute doesn't provide any standards for terminating those rights, what are you supposed to do once you get notice? Justice Kagan, just because he's in the door as a parent, that doesn't mean the statute let him leave out the back door with the child when there was no, no determination with respect to any kind — it would be unprecedented to think that because you had a failure to remediate to prevent the breakup of an Indian family, that's a basis for awarding custody? And that's the United States' view. Kagan. But you're not answering the question of what's the point of labeling him a parent if he gets none of the protections that the Act provides to a parent. You're assuming that this entire Act was to make sure unwed dads who are Indian got more time than non-Indian dads to veto adoptions, and that had — that's not even remotely the purpose of this. Well, wait, wait, isn't your answer 1915a still applies? 1915a still applies. And so 1950a means that's right. Right. So he does have a considerable right. Well, 19— I mean, they'll have to go through a set and decide. They have to give it to him unless — unless something overcomes the preference or there is good cause to the contract. He's not — he didn't seek to adopt the child, and he's not one of the preferred parties. I'm thinking in general. Well, no father is a preferred party under 1915. No father can assert 1915. That is— But doesn't 1915 preclude the adoptive parents, because they're not in the preferred category? I mean, if 1915a precludes the adoption, then the adoptive parents would have no legal basis for objecting to an award to the father. Right. Well, we have, I mean, three responses. First, we — that provision assumes that somebody actually in that — in that statute stepped up to adopt the child, and no one did here. Second, it would raise grave constitutional concerns. I mean, just look at A3 on the other Indian families. If Congress presumptively presumed that a non-Indian parent was unfit to raise any child with any amount of Indian blood. And so it would either have to — it's either not implicated here or resolved by good cause. Otherwise, you do have an extraordinary reading, Justice Ginsburg, of a statute that would override a birth mother's right to choose the adoptive parents. Why is your position that the preference is absolute, or is it simply a factor to be considered with the other? In other words, if every other factor suggests that the best interests of the child are served by placement with the adoptive couple, does the preference under 1915a trump all those other interests? It's not our view. Our view is you would have — you absolutely would have had good cause with — here when you had the 27 months and also the mother's choice. The tribe's position is that — It's not listed under the — there are guidelines for what constitutes good cause. The best interests of the child is not listed under the government's guidelines, which, again, is extraordinary. It's also extraordinary that any other adopt — any other Indian would get a preference whether or not that Indian had the same tribal member. In your view, at what point, at what date did the Indian father lose the right to ask for custody? Because he changed his mind in January, there was about a 5-day period there. Yeah. The adoption proceedings had not concluded. Right. And at this point he said, in effect, I've changed my mind. So State law is you have to support the mother during pregnancy or at birth. So the cases are pretty clear that the father can't wait until he learns of the adoption. So the State law determines when his rights under the Federal Act end? No. State law determines just when you have parental rights to begin with. So there's no question that this particular dad, had State law applied, the adoption would have gone forward and his rights would have been terminated by virtue of his lack of a right to object to the adoption. Unless we believe that the Federal statute determines when he has parental rights by defining parent to include a biological father. Yes, but you still have to have custodial rights, though. That's not a basis for granting him custodial rights. This, again, the – we can talk about F, but I think F is pretty obvious that that assumes preexisting custody. I wanted you to talk about F. Are you going to say something about that? Yes, and I do. You're going to leave it to the government. You don't agree with the government's position, do you? Well, the government agrees with us on F. But if you read D, by the way, it is inexorably intertwined with E and F. It's talking about the breakup of a removal proceeding under F or a foster care proceeding under E. And the government concedes that neither of those provisions create rights. They just make it harder to terminate the custodial rights of a parent who has custody that can be continued. The other side doesn't really have a definition of custody or continue that would sweep in a dad without any parental rights. And I do just want to say in terms of looking, taking one step back, this is not the case that Congress had in mind when it passed the Act to halt the depletion of the tribal population. This involves accretion and conscripting other people's children to grow the tribal population based solely on a biological link. Ms. Blatt, continuing on the assumption that this man is a parent under the statutory definition, what your argument seems to be suggesting is that there are really two classes of parents under the statute, right? That everybody is labeled a parent, but then there are the parents who get the protections of the termination of rights provision and the parents who don't. And I'm just wondering why, if this statute creates two classes of parents, it didn't say that in a more up-front kind of way. It seems a strange thing to read into a statute in this sort of backhanded way that there are really two kinds of parents. I think it's rather completely upside down that this entire statute, with 20 or 24 references to removal, custody, return of child to the parent, is somehow being read to create rights. There is no language in the statute that creates custodial rights. And the birth father in this case, because of an exhaustion failure under D, walked off with the child without any best interest determination. If I could raise my hand. Thank you, counsel. Mr. Clement. Mr. Chief Justice, and may it please the Court, but for the application of ICWA, two things would be crystal clear. The birth father would have absolutely no parental or custodial rights under State law or the Constitution, and second, the baby girl would be entitled to a custodial determination that focused on her best interests. Now, the lower courts' Sotomayor, what do you do with the lower court's determination that one of the factors of the best interest calculus was the Federal policy to ensure that Indian children, children of biological Indian parents, at least one, should be raised with their parents? Because the lower court said it thought it was in the best interest of this child to stay with its birth father in light of the Federal policy. So I disagree with your colleague that there wasn't a best interest model.  Justice Sotomayor, would that it were true that the Federal preference was one factor in a multi-factor test that looked at this child in her best interest? That did not happen here. And if you have any doubt about that, look at page 40A of the petition appendix. And what the lower courts' Sotomayor, what do I do with the lower court's finding that this father, despite not being married to his prior lover, had children, was attentive of those children, had the resources to raise the child? What do we do with why are you? What you do with that, Justice Sotomayor, is you look at what context those findings were made. Those findings were made in the context of 1912f. And the Court specifically said that for those purposes, all I can look at is the doubt would pose a serious harm to the girl. And what is specific. Sotomayor, look at something else that everybody is ignoring. What the Court specifically said is they looked at the expert testimony of how it would cause trauma, despair, anxiety, depression on this baby girl to be taken from her parents. And the Court specifically said all of that was legally irrelevant because 1912f only lets you look at the harm from the new custodial relationship. It doesn't let you look at any harm from the breakup of the previous custodial relationship. And all of that would make sense if you were talking about 912f's application to the situations it's designed for. Kennedy. Well, and even in that sense, serious emotional and physical damage is a much different threshold than the best interest of the child, even on the statutory terms. It's miles away, and it's the appropriate standard when you're taking somebody who has existing legal custody and depriving them of it. But everywhere in the law, including ICWA, when you make an initial placement of a child in a new custodial setting, you don't do that unless you look at the child's best interest. And look at 1916a of ICWA, which is the only provision in the Act that specifically contemplates a child being placed in a new custodial setting. It talks about what happens if you have an adoption and then the adoptive parents for some reason terminate their rights, and then you send the child back to their original Indian custodian. And in that situation, recognizing that when there's been a break of custody, you don't just send somebody off to a new setting based on, beyond a reasonable doubt, you look at the best interest of the child. And that's the question. Sotomayor, Mr. Clement, can I go back to that best interest calculus? There's two timeframes in my mind to look at. In January, when he asserted his parental rights, and two years later when the trial was heard. If there's serious emotional harm, I think the Court below said we're not looking at what happens at the time we're deciding the custody issue, because otherwise we're going to give custody by estoppel. We're going to encourage people to hold on to kids and create the serious physical harm. In January, when he asserted his rights, that's what we're looking at. What was in the best interest of the child at the time the issue was raised? And that was four or five months after the birth of the child. Clement, Well, Justice Sotomayor, I'm here representing the guardian who represents the best interest of the child. From the child's perspective, the child really doesn't care whose fault it was when they were brought in one custodial situation or another. They just want a determination that focuses on, at the relevant time, that time, what's in their best interest. And so in the same way that we think if you rule in our favor and you remand to the lower court, that there has to be a best interest determination that takes into account the current situation, notwithstanding that that would be on the hypothesis that the last 15 months of custody were based on a legal misunderstanding. Sotomayor, do you still think that's real? Sotomayor, so we're going to freeze it at that point, or are we going to freeze it today after the child's been with his — with her father for two years? Clement, You freeze it at the time that somebody's talking about changing a custodial situation. But what is so tragic here is that the lower court applied 1912d and f, which are clearly designed for a situation when you're contemplating transferring custody away from an existing custodial relationship. They looked at that and applied those inapposite standards to create a transfer to somebody with new custody. Now, Mr. Ginsburg. Ginsburg, what about now, when you said the best interest — now the child has been some 15 months with the father. So if a best interest calculus is made now, you would have to take into account uprooting that relationship, would you not? Absolutely, Justice Ginsburg. We're not here to try to say that anybody's entitled to automatic custody of this child based on some legal rule. If you take it, you'll say that that goes back to the South Carolina court if you prevail. Absolutely. And I would hope with instructions to please make that determination as quickly as humanly possible, so that it's true. If the best interest of the child is the uniformly accepted standard in State courts, and if we forget constitutional avoidance problems, which I think exist here, is there anything in the statute that allows us to import the best interest of the child into the statutory language, or do we have to just rely on constitutional avoidance and really rewrite the statute? Well, a couple of things, Justice Kennedy. If you got to the point of applying 1915a and the placement preferences, and we agree with Petitioners that they're not squarely applicable here, because the birth father's argument was not that I get to adopt, but that I have an entitlement. If you got to that, I think the good cause standard gives you a vehicle for importing  I also think that the good cause standard gives you a vehicle for importing the guidelines to what's good cause, do not include best interest. That's right, but even the Justice Department doesn't say that the guidelines are binding or entitled to anything more than skidmore deference, and I'd take constitutional avoidance over skidmore deference any day. But the second thing I would put on the table is, I think the fact that 1916a tells you that the one time you're thinking about transferring custody, Congress looked to the best interest standard, that's a clear hint that if you're talking about best interests, and again, I think it's imperative to look at 1912d, e, and f. As the government, the Solicitor General recognizes, they all contemplate continued custody, e and f do. Now, then the government turns around and says, well, but d was a basis for what the lower court did, which is to transfer custody. With all due respect to the government, d makes even less sense as a basis for transferring custody than f. At least f has some standard designed for some transfer of custody. It happens to be the wrong transfer. It's a transfer away from continuing custody out, and it's beyond a reasonable doubt. But d has no standard to satisfy. And their position is that because this birth father was not presented with remedial and rehabilitative services, therefore, because he didn't get remedial services that presumably he needed, he gets the child. That's crazy. And what it shows is that 12d assumes that it's like an exhaustion requirement, and unless and until these services are provided, you preserve the status quo ante. But the lower court didn't preserve the status quo ante. The lower court ordered this poor girl sent to somebody who, at least under State law and just a matter of practicality, is a stranger to her. And nowhere in the law do you see any child being transferred to a new custodial arrangement without a best interest determination. And why did it happen here? It happened here because of ICWA, which by its terms does not apply to these situations. And it happened because of 3256 of Cherokee blood. Now, the Justice Department back in 1978 recognized there were profound constitutional problems with this statute. Then Assistant Attorney General, later judge Patricia Wald, told Congress that there were applications of this statute that raised equal protection problems because they treated people differently solely on the basis of race. One of the things she pointed to is what she described as the B portion of the definition of Indian child. And that's what makes this child an Indian child here. It's biology. It's biology combined with the fact that the tribe, based on a racial classification, thinks that somebody with 325 — 325 — 1 percent Indian blood is enough to make them a tribal member eligible for tribal membership. And as a result of that, her whole world changes and this whole inquiry changes. It goes from an inquiry focused on her best interests, and it changes to a focus on the birth father, and whether or not, beyond a reasonable doubt, there's a clear and present danger. Again, that's the point. Breyer, what do we do about that? You correct the lower court, and there's two paths to correct the lower court. One way to correct the lower court is to say, look, can I finish the answer? You could either do it by changing the definition of parent and recognizing that given the consequences that flow from a parent in the statute, it only makes sense to prove something more than bare paternity. Or you could do it by recognizing that if somebody gets in the front door of the statute based on bare paternity, you have to interpret provisions like D, E, and F with sensitivity to the fact that under that reading, just because you're a parent doesn't mean you have these kind of extraordinary rights. Thank you, counsel. Mr. Rothfeld. Thank you, Mr. Chief Justice, and may it please the Court. It is simply false to say that this child's custody was transferred without a best interest determination, as is apparent from any reading of the lower court decisions in this case. Both of the State courts here looked very closely at the situation here, and they found in their words that the father here was a fit, devoted, and loving father. And they said expressly, and found expressly as a factual matter, that it was in the best interest of this child. That's correct under the Act. Where in the Act does it say that you need to consider whether or not the father is a – would be a good parent? I thought your reading was that it doesn't matter. All that matters is that he has, in his case, three 128th's Cherokee blood. Well, I think that there is some confusion as to exactly what the State courts did here and what ICWA does. Because ICWA does not assign custody. ICWA addresses the question whether or not the parental rights of a parent of an Indian child can be terminated. The courts here, both courts, correctly held that under the plain application of ICWA, under Section 1912d, as discussed by Justices Sotomayor and Scalia, clearly parental rights could not be terminated. The question then arose what happens to the child. And the Court then, because there were a natural parent with intact parental rights, applied the usual rule that there is a strong presumption that a fit parent, natural parent who wants to exercise custody of his or her child, should get custody. That was what happened here. The Court – Kennedy, you want us to write the case as if this is just a standard best interest determination and this Federal statute is irrelevant? I don't understand your argument on that. No, no, no, Your Honor. I think that the analysis of the South Carolina Supreme Court was exactly right in this – in those terms. The Court applied ICWA, the Federal statute. The question was, could the parental rights of this parent be terminated? This is – everyone concedes this is an Indian child. ICWA applies because of that. The question then is, can the parental rights be terminated? Sections 1912e and f address that question, d, e, and f. And do you apply a best interest of the child standard to a termination of parental rights? No, not in the order. I mean, can – I know a lot of kids that would be better off with different parents. And that, too, is exactly right, Justice Scalia. That is precisely what the ordinary State law standard says, that there is a presumption that the natural parent, if the natural parent is fit, should it be awarded custody of the child. I thought, does f apply in your opinion to this case or not? Yes. In our opinion, both d and f apply. And f has something of a best interest standard tilted towards the Indian parent. Well, I think that's right. I mean, as I read it, it's something, it's tough, but it's there. I think that's right. But I would add the caveat that it's not a best interest in the sense of we are going to apply the standard to terminate something. All right. So in your view, the best interest standard does not apply, but rather f applies. f applies. And f is a tough version of a best interest standard. Have I got it right or not? Correct. But with this addition, what it applies for is the question whether or not the rights of this parent can be terminated, whether the parental rights of the parent can be terminated. And so. How does f apply? It says continued custody. That seems to assume that custody exists. That is the other side's argument. Our response is that there is a definitional provision in it where it says that a child custody proceeding is one that includes a proceeding leading to the termination of parental rights. Parental rights are defined to be broadly as the parent-child relationship. And so we think in context, f means that if the termination of the parent-child relationship is what has to be considered. So your argument is not that continued means something different from the normal language. Your argument is that custody means something different from its normal language. Our argument is that if custody means what Congress said child custody proceeding means, which is termination of the parent-child relationship. And so we think that continuation of the relationship, the question is under f, would that be harmful for the child. But I should quickly say that f is only one part of the argument here. As Justices Sotomayor and Scalia began the discussion with Ms. Black, d also applies. d says nothing at all about custody. The question under f. Roberts, could I go back to what you just said about f? You think custody covers someone who has never had custody of the child because it refers to something beyond the accepted definition? Well, again, the definition of child custody proceeding in ICWA includes a proceeding leading to the termination of parental rights. But f doesn't say child custody proceeding. It says continued custody of the child. That's true, but I think it has to be interpreted within the context of the definitional provision and what Congress had in mind when it referred to child custody proceeding. But I think we — you know, f, as I say, is only a portion of the argument here. I mean, to return to what Justice Sotomayor said, I think it would be helpful if we could go back to what Justice Sotomayor said. Sotomayor said the same thing, that good cause under 1958 has a variant of best interests of the child, of factors that are considered. ICF is doing the same thing, allotting, however, a burden of proof that may or may not be higher than other States. I mean, some States may have clear and convincing evidence, some States may have preponderance, some States, I don't know if any, have beyond a reasonable doubt. But it's an allocation of burden. No, I think that's right, and I certainly don't intend to fight Justice Breyer. I think that's right. Scalia, I think Justice Breyer is quite wrong, because the standard that says, result in serious emotional or physical damage to the child is far from a best interest standard. Scalia, and do you know of any State that applies best interest of the child standard to termination of parental rights as opposed to adoption? Absolutely not. And I think I will try to agree with both Justice Breyer and Justice Ginsburg and Justice Scalia, and say that. But not me, right? And Justice Sotomayor, and always the Chief Justice, always the Chief Justice. You might just have to testify. But I think the crucial point is what we're talking about with the termination of parental rights under F is whether or not, as Justice Scalia says, the rights of a biological parent can be terminated, which is not sort of the ordinary best interest determination when you're choosing between two people who are strangers to the child. So I think that's right. But F is about custody, right? No, no. I think F is about, both D and F are about terminating parental rights. Parental rights cannot be terminated unless these determinations have been made, unless it's been shown that remanded life. In what proceeding? The adoption proceeding or custody determination? Any proceeding which is aimed at the termination of parental rights.  are terminated. And so if parental rights cannot be terminated under either D or F, this adoption cannot go forward, and we are in a different place. I think that's what exactly what the South Carolina Supreme Court said. It said we're going to apply, we're going to look to ICWA to see can we terminate the parental rights of this natural father. And as Justice Scalia says, that is central. There is a natural parent here who wants custody. Can his claim for custody be denied and can his parental rights be terminated? To determine that, Congress has put Federal standards in place in ICWA, in D and F. And we have to say both of those have been satisfied here. Roberts Is there at all a threshold before you can call under the statute a child, an Indian child, 3, 256th? I mean, what if the tribe, what if you had a tribe with a 0 percent blood requirement? They're open for, you know, people who want to apply, who think culturally they're a Cherokee or any number of interests, they accept conversions. I mean, is it, is, would that child be considered an Indian child? So a father who had renounced any interest in her until he found out about the adoption would have all these rights? Well, that would be a different question. What we have here is a No, no, that's why I asked it. It's a different question. Well, and the answer would, I think, be as a threshold matter, as this Court has said consistently, it is fundamental basis of tribal sovereignty that a tribe gets to determine the I thought the definition of an Indian child is just straight out of the statute. So an Indian child is someone who is either a member of a tribe or eligible and is the biological child of a member of an Indian tribe. That is correct. So I return to what is a hypothetical question and not what the statute provides. Under your argument, a tribe that did not require any blood requirement, but simply enrollment, could be considered an Indian child. Well, the child would have to be a, a, would have to be a biological parent. Yes, yes. You have somebody who has no Indian blood. He enrolls in my hypothetical tribe, has a biological child. That child would be an Indian child, and the father would be entitled to the protections you're arguing for. Well, that's true in theory, but of course, A, that is not our case. B, if that were to occur, and whether or not that would be sort of a legitimate basis for determining membership of a, in an Indian tribe, I think would be central politically. But that is a problem, because, look, I mean, as it appears in this case, is he had three Cherokee ancestors at the time of George Washington's father, all right? Now, you say, oh, well, that's a different issue. But I don't see how to decide that case without thinking about this issue. Because if your view is taken and you accept that definition, a woman who is a rape victim who has never seen the father could, would in fact be at risk under this statute that the child would be taken and given to the father who has never seen it and probably just got out of prison, all right? And you don't know that this beyond reasonable doubt standard would satisfy that. Now, that's obviously something I find disturbing as a person and also as a judge, because we're trying to interpret the statute to avoid results that would be very far out, at least. And that's what I want you to tell me. How do I prevent that kind of risk through an interpretation of the statute? Well, let me answer both that question and the Chief Justice's question, which I think have similar responses. I mean, as to the rape victim, I am confident that an application of section 1912F would lead to termination of that father's parental rights. And so he would never be in the picture as a possible applicant. Well, the question whether or not custody of someone who is engaged in such conduct could lead to serious physical or emotional damage to the child, I think there would be no difficulty in reaching that conclusion. But on the question of could a tribe establish some manipulative type of membership criteria, it's significant that that is not this case, because they're not. Aren't there Federal definitions of approvals of tribes? Not every group of Native Americans who get together can call themselves a tribe. That is quite right. And isn't one of the conditions of that a condition of blood, and not a blood voluntary membership? I'm quite sure that's right. So I think the hypothetical is a null set. I don't think it ever exists. I think that's what I was trying to get to. I'm sorry, Mr. Chief Justice. I'm just wondering, is 3256 close to zero? I mean, that's the question in terms to me, that if you have a definition, is it one drop of blood that triggers all these extraordinary rights? But it has always been the charity membership criterion that someone who can trace their lineate ancestry to a person who is on the Dawes or Oles is a member. No one has ever questioned that that is a legitimate basis for establishing  And so this is not true. Alito, what if a tribe makes eligibility available for anybody who, as a result of a DNA test, can establish any Indian ancestry, no matter how slight? I think that that would lead to the question posed by Justice Scalia, whether or not that would be a legitimate basis for establishing. No, it's different from his. He said it has to be based on blood. This would be based on blood. But I think it leads to his question that there is a Federal element to recognition of an Indian tribe. And I think whether or not tribal membership criteria so far depart from the traditional understanding of what constitutes a tribe as to be acceptable for those purposes, that would be a question to be resolved by the United States, by the political branches. Sotomayor, there are two forms of the EIFD doctrine, the existing Indian family doctrine. One applies directly to this case, what's the status of an unwed father, and they seem under that doctrine to apply the definition that a parent who hasn't been involved in the care during pregnancy is not a father. But the other side of the doctrine is the one that addresses, I think, the Chief's concern, which is you don't only have Indian blood, but you've been a father who's actually been a member of an Indian tribe, an active member. We don't have to reach that separate issue here, that EIFD, that part of the EIFD doctrine. Well, I guess I'll give you two answers to that. First, in this case, there has been a finding by the family court that this father has significant ties to the Cherokee Nation. And so if one could think that that was part of the test under ICWA, it is certainly satisfied here. I would go further than that and say that I think the vast majority of State courts have correctly rejected that theory, because it would be sort of beyond the judicial competence to determine whether or not a particular person is Indian enough to qualify for treatment as a father of an Indian child under ICWA. Again, just to nail this down, as to the particular membership criteria of the Cherokee Nation, no one has ever suggested, our opponents here do not suggest, that that is in any sense illegitimate or not a traditional basis for establishing membership in an Indian tribe. So if one can imagine wild hypotheticals of the sort that Justice Alito and the Chief Justice have suggested, they are not present here. And those would present political questions to be addressed by Congress or addressed by the executive branch. In this case, again, the State courts found that ICWA should be applied to allow a natural father to raise his child. Those courts found that it was in the best interest of the child to be raised by their natural parent, because that parent was a fit, was a loving, was a devoted parent in the words of the lower courts. Those conclusions were quite clearly correct. And if I can turn to something which attracted some attention from Justice Scalia and Justice Sotomayor in their exchanges with Ms. Blatt, the application of Section 1912d and whether or not the parental rights of this father, who unquestionably satisfies the definition of parent in ICWA. Section 1912d says that parental rights cannot be terminated unless remedial efforts have been made, rehabilitative efforts have been made to fix a family that has broken in some respect. Ms. Blatt suggests that that does not apply here because there was no Indian family. I think what Justice Scalia said was absolutely right. There unquestionably was a family here in the ordinary sense. There was a mother, there was a father, there was their little girl, there were grandparents who very much wanted to be involved in the life of this child, who knit socks for her. There's no point in ever doing that. Scalia's is my recollection correct that he had offered to marry the mother, and she rejected that? That is quite correct. I think the genesis of this case, there were an engaged couple, and the mother broke the engagement. The father was very much wanted to marry the mother, wanted to accept it. I thought that there's some ambiguity there, because one reason why he wanted to marry was that he'd get more paying allowances. Well, there are disputed facts as to what was going on, and so I don't want to hinge a lot on this. But I think it is quite clear the father, they were engaged, the father wanted to marry the mother. The father's testimony and the family court found, so we're not talking about simply assertions here, the family court found that the father was excited by the pregnancy, was looking forward to the birth of the child, that he wanted to marry the mother so that she would qualify for a military health benefit. The father at the time was excited by the pregnancy. There's no doubt he paid nothing during the pregnancy and nothing at the time of the birth, right, to support the child or the mother? That is true, but I'm not sure he was excited by it. He just didn't want to take any responsibility. Well, that was after she had rejected his offer to marry her, no? Well, these considerations are why domestic relations pose the hardest problems for judges. Our domestic relations judges all by themselves, every day, have these difficult problems. If we could appoint King Solomon, who was the first domestic relations judge, a special master, we could do it, but we can't do it. What we have here is a question of a Federal statute which, as I must understand it, displaces the ordinary best interest determinations of the State courts. Would you agree with that? I would agree that Congress indicated that part of the best interest inquiry for an Indian child takes account of their status as an Indian child, and Congress made factual determination. The fact is that the child is an Indian child, and the fact is that the child is an Indian child. I don't know why you make that concession. I mean, your client has been deprived of parental rights. I do not know that it is traditional to decide whether a parent will be deprived of parental rights by assessing what is in the best interest of the child. That seems to me quite extraordinary, not normal. Is that true under South Carolina law? Yes, that is. Under South Carolina law, in this adoption proceeding, if it had not been for the statute, the best interest of the child standard would not have applied. I think there are three things that are going on here. Had ICWA not applied here at all, then the father would have had no right to object to the adoption, so the adoption would have gone forward had it not been for ICWA. However, as Justice Scalia says correctly, when a natural parent is involved and the natural parent has rights that have not yet been terminated, and this parent has not, then the ordiners for best interest inquiries would not. But he would be out under South Carolina law because he didn't support the child during the pregnancy. I have to disagree with that, Justice Ginsburg. The family court judge found that his parental rights could not be terminated as a matter of South Carolina law, as well as a matter of ICWA law. And so we think it is quite clear that this father's rights would not be terminated. As Justice Scalia says, in the ordinary courts where we're not engaged in a free-floating best interest inquiry, one would say whether or not a profound showing of parental neglect or insufficiency has been made to terminate those rights. If it cannot, then that father should get custody. In response to what Justice Kennedy had asked about it. Ginsburg. The termination of parental rights requires a showing that it's an unfit parent. He's right. That is absolutely right, and no such showing has been made or could be made in this case. And if I may just finish. You have an extra minute. The both of the State courts in this case carefully looked at the situation here and found that this father, far from being an unfit father, was a fit, loving, devoted father who had created a safe, satisfactory, and loving environment for the child. Under ordinary South Carolina standards, once one gets past ICWA, parental rights cannot be terminated in a situation of this sort. Parental rights, as Justice Scalia says, of a natural parent who is. Well, if this case would have come out the same way under purely South Carolina law, then why are we here? The only reason that ICWA comes into play is because South Carolina law did not give this father a right to object to the adoption. Thank you, counsel. Thank you very much, Your Honor. Mr. Eutner. Mr. Chief Justice, and may it please the Court. I'd like to start with the definition of parent under the Act, because I think a lot flows from that. The Act provides that a parent is a parent of an Indian child if the biological parent except where the child or where the parent's paternity has not been established or acknowledged. Here, the father's paternity was acknowledged and established, both courts below found. As a consequence, he has not simply a biological relationship to the child, he has a legal relationship to the child created under Federal law. Then. But did you, at your, when you began, do you use paternity in the biological sense? Paternity itself is in a biological sense, but one. As you interpret the statute, paternity is the biological sense. Yes. Not an existing parental relationship. No, no, biological sense, but the establishment. It says that, doesn't it, a parent is the biological parent? Yes, it does. That's what it says. Yes. But what I'm saying is once, in the unwed father situation, once the father establishes or acknowledges paternity, the father has a legal relationship, not just a. Family law is traditionally a State province, but your argument is that Federal law can take a traditional family law term like parent and perhaps others and give it a meaning that is very different from its traditional meaning or its meaning under State law. Well, several things about that. First of all, there are States. The Casey-Amicus brief in footnote 7 identifies a number of States which recognize parental rights for a parent who has established or acknowledged citizenship. So the State law varies on that. And this was the very, one of the very problems Congress was concerned about with respect to Indian children, because. Scalia, I didn't understand. Citizenship? I'm sorry. Who has acknowledged citizenship? I'm sorry. I meant to say paternity. Yes, sorry. What you have here are people who are citizens of two separate sovereigns. An Indian tribe is a sovereign and a State. Congress tried to accommodate those competing interests by leaving the cases in State court, letting them be subject to State law, but subject to minimum standards to protect the people who are citizens or eligible for citizenship in the Indian tribe. That is a classic implementation of Congress's plenary responsibility in the Federal Trust and Guardianship for Indians, and nothing could be more at the core of tribal self-determination and tribal survival than the determination of tribal membership and the care about what happens to Indian children. Mr. Kneedler, let's say you are right that this man is a parent under the terms of the Act, so not just a biological father, but also he has a legal status as parent under this Act. And then 1912 says, well, this is how you go about terminating parental rights, right? But then your argument suggests that one of these clauses applies to him and the other one doesn't, even though he's a parent. But you're saying he only gets some of the protections, that there are really two So where does that come from? I think it's not two classes of parents. It comes from the text of F itself, which talks about continued custody, which we think means that F applies, it presupposes that there is custody to continue. And that's just a condition on the termination of parental rights. It's a very strange way to put it. I mean, just in passing in the sentence that the continued custody. I mean, you would think if that's what they meant, they would say where the child is within the custody of a parent, comma, no termination of parental rights may be ordered in the absence of a determination, blah, blah, blah, blah, blah. It doesn't say that. It says no termination may be ordered in absence of a determination, including testimony of a qualified expert, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional. When it's framed that way, I am inclined to believe that the continued custody means looks to the future, the continuing custody by this person in the future. To read into it the fact that the whole provision only applies to someone who is then in custody of the child, that's very strange. That's not the way somebody would write a provision like that. I mean, I grant you it is somewhat awkwardly written, but we think the sense of it is that because this is a, as this Court noted in the Santosky decision, this is a very unusual statutory provision with respect to the burden of proof, and there is some logic for Congress applying this where there is a custodian. Breyer. But doesn't it happen in your interpretation, unlike the two parties who have an interpretation I can understand, that, remember my hypothetical, which I deliberately made dramatic, we can think of a whole range of things short of that, where the father has seen the mother never, perhaps, or of sperm donors, or very short periods of time. And under your interpretation, where there is an ongoing relationship, even a short one, at least they can't give the child to the father, where it would be very harmful to the child. But under your interpretation, the one category of people who is exempt from that are the category of fathers who have never seen the mother, who have seen the mother a very short time, who may be in the end, they are not even subject to looking to see if it's very harmful to the child. So I just, am I right about your interpretation having that effect? And if it does have that effect, what's the justification for it? There's several things about that with respect to the rapist and the sperm donor in the 35 years' history of the statute. Breyer, so you can say, oh, there's no such thing as a parent, a father, who only sees the mother. No, no, no. Okay. Now, let's suppose there is such a thing. As long as there is such a thing, the anomaly that I mentioned seems to me to exist. Well, am I wrong or right about that? And if it exists, what's the basis for your creating an interpretation of the statute that would produce it? It's not as anomalous as you're suggesting, because State law standards still apply. And under State law standards, under Santosky, there has to be clear and convincing evidence to terminate, to apply the State termination of parental rights provisions, which is what the family court did in this case. This is a Federal overlay, an additional requirement. If I could, though, move on to the next point. Kagan But as a Federal overlay, Mr. Kneedler, I mean, does it make sense to sort of split apart D and F in this way? Because D is the curing provision. It says you have to take steps to try to cure this parent and, you know, to try to make him or her a better parent. And then F says here's the standard for terminating parental rights if those curative efforts have failed, right? So to use to have the curative provision, but not the standard, just seems to make a mess of the statute. Kneedler, With respect, I don't think so, because custody is in the one and not in the other. D speaks of a breakup of the family relationship, and I think there the family relationship, because it speaks of termination of parental rights, which is in turn defined in the Act as anything that terminates the parent-child relationship, which can be much broader than whether the parent actually has custody. Ginsburg, But the whole thrust of it, this is directed to providing remedial services, which it seems that it fits a situation where someone has custody, but is having problems getting his or her act together, so needs the help of a social worker, but it makes no sense to talk about remedial services for someone who has never had custody. Kneedler, With respect, Justice Ginsburg, I don't agree. Remedial services here would entail the remedial services have to be tied to whatever the problem is. And here the problem was the father had not shown sufficient interest in the child. Remedial services would have been efforts to interest the father in the child. Here that wasn't necessary, because as soon as the father found out about the adoption proceeding, he acknowledged and established his paternity and said, I want that child. But he didn't want anything to do with the child if the mother had kept the child in her care. It was only when she wanted to put it up for adoption that he had developed this interest in the child. And that's the point when ICWT kicks in. ICWT does not try to regulate the relationship between the mother and the father. That is left to State law or tribal law. ICWT kicks in only when there's going to be an adoption or a termination of rights and the child is going to be placed outside of the relationship. Roberts, Are the would-be adoptive parents required to provide remedial services and rehabilitative programs under D? Kneedler, No. Their burden is to demonstrate that that has happened, the remedial services. Roberts, So if the tribe wants to defeat the adoption, all they have to do is do nothing with respect to the father's? Kneedler, I think the family court could direct the remedial service. This happens, I think, frequently in family court, is the remedial services. This is not an unusual provision. Much State family law provides for this. The State court can oversee the remedial services, and that could have been done in this case. Roberts, Thank you, Mr. Kneedler. Ms. Blatt, you have 3 minutes remaining. Blatt, Thank you, Mr. Chief Justice, and may it please the Court. If you affirm below, you're basically banning the interracial adoption of abandoned Indian children. There's not a single adoptive parent in their right mind who is going to do what the Court below said, which is go through these Kafkaesque hoops of making sure an absentee father's desire to be a parent has been stimulated. This is a private adoption. This is absurd that an adoptive parent would beg the family court to go provide parenting classes. And I wanted you to keep it. Sotomayor, this Act, in terms of voluntary surrender of Indian children by parents, says that it's not final for an adopted parent until the court does the adoption decree, gives the mother the right or father to rescind the voluntary adoption until the very last minute. Has that stopped the voluntary adoptions? Blatt No, but this – first of all, I mean, I love that about this case, the irony here. He had no – we didn't need his consent under State law. So the application of 1913, which allowed this withdrawal of consent, mandates the return of the child. Well, there was no way to return this child to anybody other than the mother. And I want you to keep in mind about this case is your decision is going to apply to the next case, and to an apartment in New York City where a tribal member impregnates someone who's African American or Jewish or Asian Indian. And in that view, even though the father's a completely absentee father, you are rendering these women second-class citizens with inferior rights to direct their reproductive rights and their – who raises their child. You are relegating adoptive parents to go to the back of the bus and wait in line if they can adopt. And you're basically relegating the child, the child, to a piece of property with a sign that says, Indian, keep off, do not disturb. This case is going to affect any interracial adoption of children. Scalia. That was its intent. No. You don't think that that's what its intent was? No. It only applies to children of – to tribal children. And the purpose was to establish much more difficult standards for the adoption of a child? No, Justice Scalia. Now, maybe you disagree with that policy, but that's clearly a policy behind the law. No, I think the policy is fantastic. It was talking about Indian families who were being ripped away because of cultural biases and insensitivity. This case didn't involve cultural biases. It didn't say that. It's definition of – There's 30,000 pages of legislative history that's talking about the removal. That's what provoked the Act, that Indian children were being removed from their families. But the Act is written in much broader terms. I agree. 1915 is extraordinary, if you read it the way the tribe does, which is, and the government does, and a little bit about the membership criteria. The tribe's view is any child born Indian is automatically a member. So even if the parents withdrew their tribal membership, this child would be covered. Thank you, counsel. The case is submitted.